United States Bankruptcy Court
District of South Dakota

Charles L. Nail, Jr.
Bankruptcy Judge



Federal Building and United States Post Office          Telephone: (605) 945-4490
225 South Pierre Street, Room 211                              Fax: (605) 945-4491
Pierre, South Dakota 57501-2463

June 26, 2007

Cheryl Schrempp DuPris,
   Assistant United States Attorney
Counsel for Plaintiff
Post Office Box 7240
Pierre, South Dakota  57501

James P. Hurley, Esq.
Counsel for Debtors-Defendants
Post Office Box 2670
Rapid City, South Dakota  57709-2670

>        Subject:    ***United States of America v. David J. Hump, et al.***
>                    ***(In re David J. Hump and Karen L. Hump)***
>                    Adversary No. 05-3009
>                    Chapter 12; Bankr. No. 05-30175

Dear Counsel:

   The matter before the Court is the motion for summary judgment filed by the United States of America, acting through the United States Department of Interior, Bureau of Indian Affairs.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, the Bureau of Indian Affairs' motion for summary judgment will be denied and summary judgment will be entered for Debtors-Defendants David J. Hump and Karen L. Hump on Counts Two and Three of Farmers State Bank of Faith's complaint herein.

   **Summary**.  On December 22, 2005, Farmers State Bank of Faith ("Bank") filed an adversary complaint against Debtors David J. Hump and Karen L. Hump ("Humps") and Chapter 12 Trustee John S. Lovald.  By its complaint, the Bank sought:

   (1)   a determination of the status and validity of David Hump's ownership of certain Trust Land exchanged or to be exchanged with the Cheyenne River Sioux Indian Tribe;

Re: *United States of America v. Hump*
June 26, 2007
Page 2

    (2)    a determination of the validity of the Bank's mortgage on certain Trust Land conveyed or to be conveyed by the Cheyenne River Sioux Indian Tribe to David Hump;

    (3)    the entry of a Judgment granting the Bank an equitable lien on certain Trust Land conveyed or to be conveyed by the Cheyenne River Sioux Indian Tribe to David Hump;

    (4)    alternatively, the entry of a Judgment granting the Bank an equitable lien on certain Trust Land currently owned by David Hump;

    (5)    the entry of a Judgment subordinating to the Bank's claim the interest and claims of the Humps and their other creditors in and to certain Trust Land conveyed or to be conveyed by the Cheyenne River Sioux Indian Tribe to David Hump; and

    (6)    alternatively, the entry of a Judgment subordinating to the Bank's claim the interest and claims of the Humps and their other creditors in and against certain Trust Land currently owned by David Hump.  By order dated January 30, 2007, the United States of America, acting through the United States Department of Interior, Bureau of Indian Affairs ("BIA"), was substituted for the Bank as plaintiff herein.

On May 7, 2007, the BIA filed a motion for summary judgment.  The BIA's motion was supported by a declaration of Gregg Bourland, a Realty Officer with the BIA; an affidavit of Morris M. Gustafson, the President of the Bank; a statement of undisputed material facts, and a brief.  On June 8, 2007, the Humps filed an objection to the BIA's motion for summary judgment.  The Humps' objection was supported by an affidavit of David Hump and a brief.  On June 18, 2007, the BIA filed a reply brief and a supplemental affidavit of Morris M. Gustafson.  The matter was then taken under advisement.[1]

**Applicable Law.**  Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).  An issue of material fact is *genuine* if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein).  A genuine issue of fact is *material* if it might affect the outcome of the case.  *Id.* (quotes therein).

---

[1] Trustee Lovald did not file an objection or other response to the BIA's motion for summary judgment.

Re: *United States of America v. Hump*
June 26, 2007
Page 3


The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (citation omitted).

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out that part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Coop.*, Inc., 838 F.2d 268, 273 (8th Cir. 1988). No defense to an insufficient showing is required. A*dickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995) (both cited in *Bell*, 106 F.3d at 263).

**Material facts.** In this case, the BIA set forth the following facts in its statement of undisputed material facts:[2]

1. David and Karen Hump (Debtors) were farm loan customers of the Farmers State Bank (Bank) of Faith since 1994.

2. By January 2004, Debtors applied for additional loans from Bank. The purpose of one loan was to acquire interests in Indian trust land, including undivided fractional interests which would be exchanged for trust land held in severalty closer to the Debtors' home place.

3. In January 2004, Bank approved Debtors' loan application and sought issuance of loan guarantees from the BIA, which application was approved and loan guarantees were issued on or about February 4, 2004.

---

[2] The BIA's citations to the record have been omitted.

Re: *United States of America v. Hump*
June 26, 2007
Page 4

4. David Hump presented an "Application for Exchange" to the BIA Land and Natural Resources Committee. Mr. Hump proposed to purchase lands held in severalty and undivided fractional interests in real property held in trust by the United States for individual Indians and then exchange the fractionated interests for full ownership interest held in trust for the Tribe.

5. Although the Federal Government held title in trust for the Tribe, the title to the land to be exchanged to Mr. Hump had full value of fee simple or lands held in severalty.

6. On February 11, 2004, Bank consolidated Debtors' earlier notes and closed the following three loans with Debtors: 1) a one-year $25,000.00 operating note at NY prime + 2% variable (interest may change quarterly); 2) a 30-year refinance note in the amount of $1,010,000.00 at NY prime + 2% variable (interest may change quarterly); and 3) a 20-year note in the amount of $298,704.00 at NY prime + 2% fixed for real estate purchase.

7. Debtors' notes were cross-collateralized. In addition to earlier real estate mortgages and security agreements in Debtors' livestock, machinery, and equipment, Debtors executed a new mortgage in favor of the Farmers State Bank on February 11, 2004.

8. The parties intended that the Bank would have a mortgage on all real property owned by the Debtors, including the Indian trust land that David Hump was to acquire in the land exchange.

9. The February 2004 mortgage contained the legal description of the trust property David Hump was expected to receive in the land exchange.

10. Mortgages to real property held in trust are normally recorded in the BIA Land Titles and Records Office after approval by the Secretary.

11. The February 2004 mortgage could not be approved by the Superintendent until the land exchange was completed.

12. Since May 2004, as interests in trust land came up for sale, loan proceeds were used to purchase those interests in David Hump's name.

Re: *United States of America v. Hump*
June 26, 2007
Page 5

13. Fractional interests, which were purchased and titled in David Hump's name, have been exchanged for full ownership interests in trust land closer to the Debtors' home.

14. In July 2004, approximately $49,600 in loan proceeds were used to acquire two quarters (320 acres) of allotted Indian trust land from Alvina Hump in Ziebach County described as SE4 of Sec 6 and SE4 of Sec 5, Township 9 North, Range 18 East, Black Hills Meridian. David Hump received a trust deed.

15. On April 11, 2005, loan proceeds were used to make a down payment of $20,000.00 and David Hump entered into a Contract for Deed with Alvina Hump for the purchase of five acres and a home located in SW4NE4NW4NW4 of Sec 8, Township 9 North, Range 18 EBHM in Ziebach County for $60,000.00.

16. In September 2005, in exchange for undivided fractional interests equivalent to 920.73 acres with equated valued [sic] of $115,041.00 acquired with loan proceeds, David Hump received full ownership in 772.72 acres of trust land in Ziebach County valued at $115,100.00 and described as SW4 of Sec 4; Lots 1 & 2 S2NE4 of Sec 5; E2SE4, E2E2SW4NE4, SE4NE4, and E2E2W2E2SW4NE4 of Sec 7; NE4 and SE4 of Sec 8, all in Township 9 North, Range 18, EBHM.

17. On October 14, 2005, Debtors filed a Chapter 12 Bankruptcy Petition.

18. In April 2006, in exchange for undivided fractional interests equivalent to 540.33 acres with equated value of $69,018.64 acquired with loan proceeds, David Hump received a trust deed to 399.60 acres, more or less, of trust land valued at $69,100.00 described as Lots 3 &4, E2SW4 and W2SE4 of Sec 7; and SW4 of Sec 8, all in Township 9 North, Range 18, EBHM.

19. Additional loan proceeds were used to acquire additional undivided fractional surface interests and mineral rights in David Hump's name. David Hump intends to retain fractional surface interests equivalent to 80.91 acres with estimated value of $8,126.00 because of its location to other property he owns.

20. David Hump's remaining undivided fractional surface and mineral acre

Re: *United States of America v. Hump*
June 26, 2007
Page 6

       interests will be traded for full ownership acres of substantially equal value (estimated 100-120 acres, depending on the value of the land traded for) in Ziebach County located in W2 Sec 9, Township 9 North, Range 18 EBHM.

21. The Superintendent approved the February 2004 mortgage on February 27, 2007.

22. In addition to the land described above, David Hump owns additional trust land in Ziebach County described as: Lot 2, SW4NE4, Sec 6, Township 9 North, Range 18 EBHM (80 acres); and NE4NE4 and SE4NE4, Sec 6, Township 9 North, Range 18 EBHM (80 acres). Two mortgages in favor of the Farmers State Bank were approved by the Superintendent and filed with the BIA on January 15, 2004.

23. In August 2000, approximately 129.57 acres of fee status land (taxable land) in Dewey County located in the SE4 of Sec 18, Township 12 North, Range 24 EBHM owned by David Hump and Darren Fischer were placed into trust.

24. Because an adjacent 40 acres has a lien in favor of the Farmers State Bank, those 40 acres could not be placed into trust. This property is adjacent to Eagle Butte. Deeded land located right next to this property was recently purchased by the Tribe for $1,000.00 per acre.

25. Except for the fractionated interests, the Indian trust land titled in David Hump's name has the full value of fee simple.

26. Based upon improvements, including an artesian well, buffalo fence and corrals, Debtors value their home quarter [NE4 of Section 6- T9- R18 Ziebach County] of 160 acres at $1,000.00 per acre for a total of $160,000.00.

27. Debtors value the rest of their ranch at $210.00 per acre. Gregg Bourland estimates that pasture land in Ziebach County has a value of $200.00-$210.00 per acre.

28. Debtors' last payment on the notes described herein was made on September 22, 2005.

29. Bank filed a Proof of Claim on November 30, 2005, and, as of that

Re: *United States of America v. Hump*
June 26, 2007
Page 7

        date, Debtors owed $1,411,362.45.

30. In exchange for consolidating Debtors' notes and extending a $300,000.00 line of credit to purchase interests in trust land, Debtors agreed to mortgage the trust land acquired in the land exchange, all other property owned, and agreed to cross-collateralize all outstanding loans.

31. Upon the completion of the land exchange with the Cheyenne River Sioux Tribe, David Hump acquired ownership to lands in severalty held in trust by the United States as a result of a loan made by Bank, which has subsequently been assigned to the BIA.

32. Debtors have experienced an increase in assets that would not have been possible except for the Bank's line of credit.

    The Humps do not appear to seriously dispute any of the foregoing facts. In their brief in support of their objection to the BIA's motion, they do not specifically identify *any* genuine issues of material fact, saying only "[t]he Affidavit of David Hump sets forth specific facts concerning Mr. Bourland's Declaration showing that there are genuine material issues existing for trial which preclude granting [the BIA's] Motion." David Hump's affidavit does set forth what he terms "serious questions" having to do with alleged technical defects in the February 2004 mortgage and several "serious issues of fact" having to do with the value of the Humps' land. However, the Humps do not explain, either in their brief or elsewhere, how any of those "serious questions" and "serious issues of fact" represent *genuine* issues of *material* fact. For the purposes of the instant motion, the Court will therefore accept each of the facts set forth in the BIA's statement of undisputed material facts as true.[3]

    **Discussion.** In its brief in support of its motion, the BIA contends it is entitled to summary judgment either permitting it to record the February 2004 mortgage[4] or granting it an equitable lien in the Indian trust land David Hump acquired with the

---

    [3] In its reply brief, the BIA cites Local Rule 56.1 of the Local Civil Rules of the United States District Court for the District of South Dakota for the proposition that because they did not respond to each numbered paragraph of the BIA's statement of undisputed material facts, the Humps must be deemed to have admitted each of those facts. However, this proceeding is governed by the Local *Bankruptcy* Rules for the District of South Dakota, which do not include a comparable provision.

    [4] The Bank did not request such relief in its complaint herein.

Re: *United States of America v. Hump*
June 26, 2007
Page 8

proceeds of the February 2004 loan from the Bank.[5]  The Court disagrees.  Based on the facts of this case, the BIA is not entitled to either form of relief.

With respect to permitting the BIA to record the February 2004 mortgage, there is no dispute that on October 14, 2005, the date the Humps filed their chapter 12 petition, the BIA had not recorded, and thus had not perfected, the February 2004 mortgage.  The filing of a bankruptcy petition operates as a stay of "any act to create, *perfect*, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4) (emphasis added).  The Court may, of course, grant a creditor relief from the stay.  *See* 11 U.S.C. § 362(d).  However, the BIA has neither requested, nor demonstrated cause for, such relief.

The BIA instead points out the filing of a bankruptcy petition does not operate as a stay "of any act to perfect . . . an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title[.]"  11 U.S.C. § 362(b)(3).  However, the BIA's reliance on § 362(b)(3) is misplaced.  That exception only applies if "generally applicable law . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection[.]"  11 U.S.C. § 546(b)(1) and (b)(1)(A).  The BIA has neither identified any such generally applicable law nor demonstrated any such generally applicable law would permit perfection of its mortgage to be effective against an intervening creditor.[6]  Consequently, the Court has no legal basis for permitting the BIA to record the February 2004 mortgage post-petition.

With respect to granting the BIA an equitable lien, there is some question whether the Court may recognize, much less grant, such a lien under the circumstances presented.  Under the Bankruptcy Act of 1898 ("Act"), the recognition of equitable liens in cases in which available means of perfecting legal liens had not been employed was specifically declared to be contrary to the policy of section 60(a)(6) of the Act.  11 U.S.C. § 96(a)(6); *Lovett v. Shuster* (*In re Garmaker*), 633

---

[5] The BIA also contends it is entitled to summary judgment treating it as a secured creditor with respect to David Hump's interests in Indian trust land.  However, it does not explain how such relief differs from the other relief to which it claims entitlement, and it does not appear to have advanced any separate argument in support thereof in either its brief or its reply brief.

[6] While it is obviously not implicated in this case, South Dakota's mechanics' lien statute appears to be one example of such a generally applicable law.  *See* S.D.C.L. § 44-9-7.

Re: *United States of America v. Hump*
June 26, 2007
Page 9


F.2d 98, 105-06 (8th Cir. 1980). Other courts have concluded this disapproval of equitable liens survived the passage of the Bankruptcy Code in 1978.

> [T]he doctrine of equitable liens comes into existence to remedy those situations where . . . there is either an absence of an available lien or no adequate remedy at law. Equitable liens may be imposed by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of the dealings in a particular case. . . . Historically equitable liens under local law found a hostile environment in bankruptcy cases. The Act of 1898 expressly dealt with this subject and provided . . . ["t]he recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section."
> . . .
>
> It is true that the Bankruptcy Code has no corresponding provision of § 60(a)(6) of the Bankruptcy Act; however, the Reform Act of 1978 basically adopted all the voiding powers available to the Trustee with some modifications, and in some respects even expanded them to an extent which makes the provision far more reaching than that which was available to the Trustee under [the] Bankruptcy Act of 1898. Thus, § 544(b) now places the Trustee in a position vis-a-vis real estate of a bona fide purchaser of real property who, of course, could defeat all liens and encumberances [*sic*] not of record and without notice[.]
>
> Thus, since there's nothing contrary in the Code, there is no reason to assume that the omission by Congress of a provision dealing with equitable liens was intentional and should be construed as an indication that the Trustee is no longer able to defeat nonrecorded secret unperfected liens including equitable liens when there was an opportunity to obtain a lien by legal means.

*Bob Cooper, Incorporated v. City of Venice*, 65 B.R. 609, 612-13 (Bankr. M.D. Fla. 1986) (citations omitted). *See also In re Executive Technology Data Systems*, 79 B.R. 276, 280 (Bankr. E.D. Mich. 1987) ("The equitable lien language in Section 60(a)(6) of the Bankruptcy Act is not found in the Bankruptcy Code. This omission did not change existing law.").

Moreover, the Eighth Circuit Court of Appeals has held, albeit in a slightly different context:

Re:  *United States of America v. Hump*
June 26, 2007
Page 10

> Since the [Uniform Commercial] Code is not ambiguous on the requirements of the creation of an enforceable security interest, there is no reason to relax those requirements.  Although the [Uniform Commercial] Code should be liberally construed, the doctrine of equitable mortgages is no longer necessary or useful in a commercial transaction since article nine reduces formal requisites to a minimum.

*Shelton v. Erwin*, 472 F.2d 1118, 1119 (8th Cir. 1973) (citations omitted).  The Court noted this result "'is commanded not by fireside equities but by the necessary technicalities inherent in *any* law governing commercial transactions[.]'" *Shelton*, 472 F.2d at 1120 (quoting *Safe Deposit Bank and Trust Co. v. Berman*, 393 F.2d 401, 402 (1st Cir. 1968) (emphasis added).  The same reasoning would seem to suggest the doctrine of equitable liens is likewise no longer necessary or useful with respect to mortgages subject to S.D.C.L. Ch. 44-8.

That is not to say the Court may *never* recognize an equitable lien.  "There is every indication that equitable liens arising from well-established doctrines such as equitable subrogation may well survive a trustee's right under 11 U.S.C. § 544(a) or § 547."  *Busch v. Washington Communications Group, Inc.* (*In re Washington Communications Group, Inc.*), 10 B.R. 676, 679 n.11 (Bankr. D.D.C. 1981) (citations omitted).  However, there has been no such showing in this case.

> The facts of this case present, however, no fraud or wrongdoing; nor any basis for the imposition of an equitable lien as in the aforesaid cases.  In the present case there was an agreement knowingly entered into between the parties.  By the terms of the agreement, a security interest was created; however, no steps were taken to perfect that interest.  The failure of the plaintiff, even assuming that it was predicated on the erroneous statement of the debtor's counsel, results strictly in an unperfected security interest.  Nor are the facts present in this setting sufficient, in any way, to justify the theory of constructive trust.

*Id.*

There is no legitimate dispute that the unrecorded February 2004 mortgage is valid between the BIA and David Hump and those who have notice thereof.[7]  *See*

---

[7] In his affidavit, David Hump points out a number of perceived flaws in the February 2004 mortgage.  The Humps, however, have not explained how those perceived flaws would affect the validity of the February 2004 mortgage – at least as between the BIA and David Hump and those who have notice thereof.

S.D.C.L. § 43-28-14.  The Court sees no significant difference between the effect of that unrecorded mortgage and the effect of any equitable lien against the real property described therein the Court might grant the BIA.  Such an equitable lien would likewise only be enforceable against David Hump, "his heirs, administrators, executors, voluntary assignees, and *purchasers or encumbrancers with notice*."  *See Savings Bank of Hartford v. Mundt*, 197 N.W. 156, 158 (S.D. 1924) (emphasis added).  In either event, the Humps, as chapter 12 debtors-in-possession, would be able to avoid the unrecorded lien against the property described in the February 2004 mortgage.

- The trustee shall have, as of the commencement of the case, a*nd without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –

    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

11 U.S.C. § 544(a) (emphasis added).[8]  *Busch*, 10 B.R. at 677-78.  Granting the BIA an equitable lien would therefore serve no legitimate purpose.

For the foregoing reasons, the Court concludes that while the BIA has demonstrated there is no genuine issue of material fact herein, it has not demonstrated it is entitled to a judgment as a matter of law.  Indeed, the record instead demonstrates the Humps are entitled to a judgment as a matter of law with respect to Counts Two and Three of the Bank's complaint.  The Court will therefore enter an order denying the BIA's motion for summary judgment and granting the Humps summary judgment with respect to those counts of the Bank's complaint. *See Cincinnati Insurance Company v. Leighton*, 403 F.3d 879, 885 (7th Cir. 2005) (citing *Advantage Consulting Group, Ltd. v. ADT Security Systems, Inc.*, 306 F.3d 582, 588 (8th Cir. 2002)) ("The fact that [plaintiff] had filed its own motion for summary judgment – in which it maintained that no disputed issues of material fact existed – put it on notice that summary judgment for either party was a possibility.").

---

[8]  A chapter 12 debtor-in-possession has all the powers of a chapter 11 trustee. 11 U.S.C. § 1203.  Those powers include the ones listed in § 544.  *See* 11 U.S.C. § 103(a).

Re: *United States of America v. Hump*
June 26, 2007
Page 12

      The BIA's motion for summary judgment did not address either its request for a determination of the status and validity of David Hump's ownership of the Trust Land exchanged or to be exchanged with the Cheyenne River Sioux Indian Tribe (Count One of the Bank's complaint) or its claims for equitable subordination (Counts Four and Five of the Bank's complaint).  Consequently, while there appears to be little, if any, dispute regarding the former, and while the record suggests the BIA will have difficulty prevailing on the latter, *see Tokehim v. Geiger* (*In re John W. Van Dyke, Jr.*), Bankr. No. L-88-01173S, Adv. No. 95-5010KS, slip op. (Bankr. N.D. Iowa October 2, 1995) (citations therein), the Court will reserve those claims for later determination.

      In that regard, by separate order, the Court will schedule a pre-trial conference, at which these and any other remaining issues can be discussed and, if necessary, a new trial date can be set.[9]

                          Sincerely,

                          Charles L. Nail, Jr.
                          Bankruptcy Judge

CLN:sh

cc:    adversary file (docket original in adversary; serve copies on counsel)

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[9] One such issue may be the reference in the Humps' objection to the BIA's pending motion to dismiss their chapter 12 case that they will give the BIA a mortgage on all of the real estate obtained through the "exchange program" described in the BIA's statement of undisputed material facts.  Depending on the value of the other property cross-collateralizing the February 2004 notes, the BIA may be an unsecured creditor with respect to the funds advanced in connection with the exchange program.  If so, even absent an objection by the chapter 12 trustee or one of the Humps' other creditors, the Court is unlikely to confirm a plan that grants a lien to one unsecured creditor but does not do the same for other unsecured creditors.